## SANCHEZ ET UX. *v.* JAMES

[No. 83, October Term, 1955.]

*Decided March 9, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William B. Bowie* for the appellants.

*H. Robert Venables* and *Marion E. West,* with whom were *West & Venables* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

William V. James, Jr., a resident of the District of Columbia, instituted this proceeding in the Circuit Court for Prince George's County to foreclose all rights of redemption in certain parcels of land which he had purchased from the Treasurer of Prince George's County at a tax sale.

In his bill of complaint on July 14, 1954, he alleged: (1) that he had purchased from the County Treasurer at a public sale on March 2, 1953, lots 22, 23 and 24

in block 4 in the subdivision known as Maryland Park for the sum of $70; (2) that the owners of the lots, Victor Sanchez and Sinforosa Sanchez, his wife, were, to the best of his knowledge, last reported residing at 2011 Columbia Road, N. W., Washington, D. C.; and (3) that, although more than a year and a day had elapsed since the lots were sold, they had not been redeemed.

Two *subpoenas* were issued for Sanchez and his wife, defendants. Both *subpoenas* were return *non est*. Notice by publication was also given warning defendants and all persons having or claiming to have any interest in the lots to appear on or before September 24, 1954, to answer the bill or redeem the lots.

On October 19, 1954, the Court entered a decree *pro confesso* against defendants and all persons having or claiming to have any interest in the lots.

On November 22, 1954, the Court entered a final decree declaring complainant to be vested with an absolute and indefeasible title in fee simple to the lots, and directing the County Treasurer to execute a deed to complainant upon payment of the balance of the purchase price and all taxes thereon accruing subsequent to the date of the sale.

On March 17, 1955, defendants filed a petition praying the Court (1) to set aside the final decree, (2) to annul the County Treasurer's deed conveying the lots to complainant, and (3) to fix the amount necessary for redemption of the lots. They alleged that both *subpoenas* were directed to them at 2011 Columbia Road, N. W., Washington, D. C., which was the address noted on the land records of Prince George's County; but that they had not resided there for 12 years, and consequently both *subpoenas* were returned *non est*. They further alleged that the assessment records in the County Treasurer's office gave as their address 6600 Central Avenue (Prince George's County, Maryland) post office address Washington, D. C.; and that they had been residing there for the past four years. They thereupon claimed that the

sheriff made no actual attempt to obtain service upon them at their residence, and hence the final decree should be set aside on the ground of lack of jurisdiction.

On June 3, 1955, the chancellor passed an order dismissing defendants' petition. From that order defendants appealed to this Court.

The law is established that tax foreclosure proceedings are *in rem* and not *in personam*. Thus the Legislature may validly provide that persons having an interest in real property sold at a tax sale shall be given notice by publication, and that personal service of process in such proceedings is unnecessary. *Gathwright v. City of Baltimore,* 181 Md. 362, 30 A. 2d 252, 145 A. L. R. 590. Of course, where the statute requires personal service of notice of a tax foreclosure proceeding, notice by publication is ineffective. *Smith v. Huber,* 224 Iowa 817, 277 N. W. 557, 115 A. L. R. 131. But, as held by the United States Supreme Court in *Leigh v. Green,* 193 U. S. 79, 24 S. Ct. 390, 393, 48 L. Ed. 623, due process of law guaranteed by the Fourteenth Amendment of the Constitution of the United States is not denied the owner of real estate by the lack of any provision for personal service on him of notice of the pendency of a proceeding *in rem* authorized by statute to enforce the lien acquired by a purchaser of the property at a tax sale, where notice is given by publication to all persons interested in the property to appear and set up their claims. In that case Justice Day, delivering the opinion of the Court, pointed out that tax foreclosure proceedings are not actually proceedings against parties, but the statute undertakes to proceed *in rem* by making the real estate answer for the public dues, and the primary object of the statute is to reach the real estate which has been assessed.

The Maryland Tax Sale Act, Code 1951, art. 81, sec. 104, provides that upon the filing of the bill of complaint, the Court shall issue a *subpoena* for all defendants named in the bill who are residents of this State. The *subpoena* shall warn all defendants to appear on or before a cer-

tain day to answer the bill or to redeem the property, and shall contain a statement that in case of failure to do so a final decree will be rendered foreclosing all rights of redemption in the property. Where two successive *subpoenas* against a defendant have been returned *non est,* or upon the return of one *subpoena non est* and proof by affidavit that a defendant has kept out of the way or has secreted himself to avoid service of the *subpoena,* or whose whereabout may be unknown, such defendant shall be deemed to be served by the publication as if he were a nonresident.

Section 105 provides that at the time the *subpoena* is issued, the Court shall order the issuance of an order of publication directed to all defendants, known and unknown, naming the known defendants and including the unknown defendants and all other persons having an interest in the property. This section declares: "When such order of publication shall have been issued and published as aforesaid, all persons having any right, title, interest, claim, lien or equity of redemption in the property shall be bound by the decree of the court which may be passed in the case as if they were personally served with process."

Section 110 provides that at the expiration of the time limited in the order of publication and in the *subpoena,* the Court shall pass a decree in accordance with the general equity jurisdiction and practice of the Court. The decree shall be final and conclusive, and all defendants shall be bound by the decree as if they had been named in the proceedings and personally served with process. If the Court shall find for the plaintiff, the decree shall vest in the plaintiff an absolute and indefeasible title in fee simple to the property.

Section 111 provides: "No application shall be thereafter entertained to reopen any final decree rendered under the provisions of this sub-title except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose. * * *"

In *James v. Zantzinger*, 202 Md. 109, 96 A. 2d 10, where the Circuit Court for Prince George's County struck out a decree of foreclosure, it appeared that two *subpoenas* had been issued for Richard R. Jacoby, the owner of the land. The first *subpoena* was directed to Richard R. Jacoby, R. F. D., Bowie, Maryland. The second was directed to Richard R. Jacoby, R. F. D., Bowie. Both *subpoenas* were returned *non est*. The Circuit Court held that the *subpoenas* were fatally defective for two reasons: (1) because Jacoby did not reside at Bowie or anywhere else in Prince George's County, but prior to the institution of the suit he had moved to Anne Arundel County; and that James, the purchaser at the tax sale, could easily have obtained the correct address, and then the sheriff of Anne Arundel County could have served a *subpoena* there; and (2) because the address on the second *subpoena*, "R. F. D., Bowie," was ambiguous. The Court of Appeals, reversing the order striking out the decree of foreclosure, held that since both *subpoenas* contained Jacoby's last known address, and since the omission of the word "Maryland" from the address on the second *subpoena* could not have misled the sheriff, the Circuit Court had jurisdiction and the decree of foreclosure was valid.

In the case before us the two *subpoenas* were directed to Sanchez and wife, defendants, at 2011 Columbia Road, N. W., Washington, D. C., although their actual residence was in Prince George's County and their post office address was 6600 Central Avenue, Washington, D. C. Defendants made no contention that complainant attempted to perpetrate actual fraud in the conduct of the proceedings to foreclose. They contended merely that complainant's attorney, who prepared the bill of complaint, was familiar with the records in the courthouse at Upper Marlboro and that it was "his oversight which caused him to overlook the address in the tax records." They claimed that the Circuit Court did not have jurisdiction because they had moved away from the Columbia Road address prior to the institution of the suit.

However, there was no allegation or proof that complainant furnished the former address for the purpose of fraud or deception. As a matter of fact, complainant's attorney obtained the address from the margin of the record of defendants' deed, which was filed in the office of the Clerk of the Circuit Court in January, 1941. Complainant's attorney also looked in the assessment book in the office of the County Treasurer, but there was no address opposite the description of the property in controversy, although the address did appear opposite the description of property two items above. It is our conclusion that there was no fraud in the conduct of the proceedings, and defendants failed to show that the Circuit Court lacked jurisdiction. In compliance with Section 104 of the Tax Sale Act, the Court issued two *subpoenas* for the defendants named in the bill, who are residents of the State, and both *subpoenas* were returned *non est*. In addition, in compliance with Section 105, notice by publication was given warning defendants and all persons having or claiming to have an interest in the property to answer the bill or to redeem the property.

As the decree of the Court below vesting absolute and indefeasible title to the lots in complainant was not obtained by fraud, and the Court had jurisdiction of the parties and the subject matter, we will affirm the order dismissing the petition.

*Order affirmed, with costs.*

HAMMOND, J., delivered the following dissenting opinion.

The statute says that a final decree foreclosing an equity of redemption shall not be reopened "except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose." Code, 1951, Art. 81, Sec. 111. *James v. Zantzinger,* 202 Md. 109, held that the fact that a resident of Maryland was not served with process, although the statute directs that he shall be, did not deprive the court of jurisdiction, because a proceed-

ing to foreclose an equity of redemption is *in rem* and notice by publication is sufficient. In the instant case the court holds that there was no fraud in the conduct of the proceeding, although the appellee, the tax purchaser and complainant below, showed complete indifference as to whether the defendants, the former owners, were or were not residents, and entire lack of effort towards finding their address, describing them in the bill as residents of Washington, D. C. After two *non ests,* they were proceeded against by publication as nonresidents, although they were residents of Maryland and entitled to actual notice by service of process under the explicit provisions of the statute, Code, 1951, Art. 81, Sec. 104, and the fact could not have failed to have been ascertained by the most casual inspection of the tax rolls.

The manifest purpose of the statute was to give finality and conclusiveness to tax sales and to afford purchasers of tax titles security from attack based on frivolous or formal defects in the tax sale or the foreclosure proceedings. The purpose should not be frustrated by the courts. I think, however, that the present case goes much too far and opens the way for easy and legal evasion of the requirements of personal service upon residents of the State and that the result is neither called for by the statute nor sound.

In *James v. Zantzinger, supra,* it was recognized that "* * * the statutory provisions as to notice required to terminate the taxpayer's right to redeem from a tax sale are mandatory and must be strictly followed", but it was held that the address given the sheriff in that case was the last known address of the defendant and so sufficient, even though the sheriff was unable to serve the defendant, because he had moved. The words of the statute "fraud in the conduct of the proceedings to foreclose" clearly embrace an intentional and wilful failure to personally serve one entitled to such service. It is not alleged in the instant case, nor do I suggest, that the appellee deliberately and purposefully intended to deceive the court or to prevent actual service on the ap-

pellants. If he had, there would be no question, I take it, that this constituted fraud in the conduct of the proceedings which would invalidate the decree. *Croyle v. Croyle*, 184 Md. 126; *Margos v. Moroudas*, 184 Md. 362. There is no difference in the consequences if the failure to serve a resident of the State entitled to service comes about from complete lack of effort or egregious error in the effort. Under the decision of the Court in the instant case, a plaintiff in a tax foreclosure sale who desired to prevent actual notice to a resident entitled to such notice, could always say that he just forgot to look for the correct address or that he looked but just somehow failed to find it. Actual fraud would be almost always impossible of proof. I think that the conduct of the appellee in the case before the Court amounted to constructive fraud in the conduct of the proceedings and that this is sufficient under the statute to invalidate the decree of foreclosure, at least as against the certificate holder who conducted the proceedings. A *bona fide* purchaser from the complainant in foreclosure without notice would, I believe, be in a different position because the decree is not void for lack of jurisdiction but voidable for constructive fraud against the one chargeable with such fraud.

"The term fraud is used in various senses. It may involve an evil intent or it may consist only of a wrongful act done to the injury of another. The former is actual fraud, the latter constructive. The former involves moral turpitude or intentional wrong. The latter may exist without the imputation of bad faith or immorality." *Stroh v. Dumas* (Vt.), 84 A. 2d 408, 411.

"By constructive fraud is meant '* * * an act done or omitted, not with an actual design to perpetrate positive fraud or injury upon other persons, but which, nevertheless, amounts to positive fraud, or is construed as a fraud by the court because of its detrimental effect upon public interests and public or private confidence'." *Bank v. Board of Education of City of New York*, 305 N. Y. 119, 111 N. E. 2d 238, 239.

"A constructive fraud is usually defined as 'a breach of duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive * * *'." *Johnson v. Radio Station WOW* (Neb.), 14 N. W. 2d 666.

Under any of the definitions, the actions and omissions of the appellee in this case seem to me to be a clear example of constructive fraud. He had a definite obligation to ascertain whether the appellants were residents of Maryland or not, and if they were, to use reasonable diligence to ascertain their correct address—that at which they could be served. Cases in various states show that a plaintiff, before he can resort to service by publication, must exercise due diligence to ascertain the residence of a defendant and that his efforts must be honest, conscientious, reasonable and well directed. 72 C. J. S., *Process*, Sec. 58, p. 1076. *Klinger v. Milton Holding Co.* (Fla.), 186 S. 526. See also *Callner v. Greenberg* (Ill.), 33 N. E. 2d 437, 440; *State v. Bagby's Estate* (Tex.), 126 S. W. 2d 687; *White v. White* (Wash.), 163 P. 2d 137; *Narum v. Cheatham* (Calif.), 15 P. 2d 1106. As the Court in *Callner v. Greenberg, supra,* put it, the inquiry must be as full as the circumstances permit.

The Code gives evidence of the obligation of a plaintiff in a tax foreclosure case to use diligence. Art. 81, Sec. 104, says that when two successive *subpoenas* have been returned *non est,* or when one has and there is "proof by affidavit that a defendant has kept out of the way or has secreted himself to avoid service of the *subpoena,* or whose whereabout may be unknown, such defendant shall be deemed to be served by the publication * * * as if he were a non-resident." Certainly, the necessity of affidavit as to the impossibility of service if only one *subpoena* has been returned *non est,* leads to the conclusion that the Legislature meant that two successive *non ests* should be the equivalent of the facts made out in the affidavit only if the two *subpoenas* were reasonably calculated to permit service. *Marx v. Ebner,* 180 U. S. 314, 45 L. Ed. 547. There must be inferred

an obligation on the plaintiff to make a real attempt to find an address which will permit service. Indeed *James v. Zantzinger, supra,* itself recognizes this because it justifies the result there by saying, in effect, that the address given was the best obtainable. Complete indifference to whether a defendant is or is not a resident, and as to where he may be served if he is, is the precise equivalent in result, as I have indicated, of a studied design to avoid serving him. This was noted by the Supreme Court of Nebraska in *Herman v. Barth,* 124 N. W. 135, 137. There the Court said: "Why should the validity of the judgment depend upon whether the party making such affidavit was mistaken as to the defendant's residence, or knowingly misrepresented such place of residence? In either event, the affidavit is a false one, and the jurisdictional fact—nonresidence of the defendant—cannot be supplied by the good faith of the party who asserts it." The Supreme Court of Florida had essentially the same problem before it, that faces the Court in this case, in *Klinger v. Milton Holding Co., supra.* There it was originally held that an affidavit of nonresidence, based upon insufficient information, and erroneous, would not give jurisdiction under an order of publication and that the decree foreclosing the tax sale should be set aside as void for lack of jurisdiction. On a motion for rehearing, the Court gave thorough and well reasoned consideration to the problem and, although finding that the plaintiff in foreclosure had not used due diligence in the making and filing of the affidavit as he was required to do, and that it was defective for this reason, went on to hold that this was not a jurisdictional defect which rendered the decree void but merely such a defect as made it voidable. In other words, it held that a *bona fide* grantee from the complainant in foreclosure would obtain good title since such a grantee is chargeable only with notice of jurisdictional defects and not with notice of error or irregularity. The former judgment reversing the decree of the lower court was adhered to but the case was remanded to allow

the former owner to amend his bill and show, if he could, that the buyer from the complainant in foreclosure was not a purchaser for value without notice. See also *Callner v. Greenberg, supra,* (Ill.), 33 N. E. 2d 437.

I think that the term fraud, used in the statute as a grounds for setting aside a decree, may, consistently with the purposes and intentions of the statute as a whole, be read to include constructive fraud, and that a decree obtained against a resident by publication without effort to effect personal service, was a decree obtained by constructive fraud and as between the former owner and the complainant in foreclosure should be set aside. I would reverse the decree.