576 A.2d 224

**ST. GEORGE ANTIOCHIAN ORTHODOX
CHRISTIAN CHURCH**

v.

**Rakshpal S. AGGARWAL.**

**No. 1638, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

July 13, 1990.

Samuel J. Brown (Daniel J. Mellin and Hillman, Brown & Darrow, P.A., on the brief), Annapolis, for appellant.

Paul E. Rosenberg, Camp Springs, for appellee.

Argued before BLOOM, ALPERT and CATHELL, JJ.

CATHELL, Judge.

The primary issue presented in this case is the constitutionality of Maryland's current statutes concerning notice to a property owner in an action to foreclose the right of

redemption resulting from a tax sale.[1] Appellant also attacks the adequacy of notice actually made in the case at bar.

The current statute pertaining to notice of an action to foreclose a right of redemption, codified at Md. Tax–Prop. Code Ann. § 14–839(a)(1) (1986, 1989 Cum.Supp.), states that the plaintiff shall show, in the title of the complaint, the last known address of the defendant *as obtained from:*

(i) any records examined as part of the title examination;

(ii) the tax rolls of the collector who made the sale, as to the property described in the complaint; and

(iii) any other address that is known to the plaintiff or the attorney filing the complaint.

Section 14–839(a)(2) of the current code then expressly limits any necessity for further search, stating, "[p]aragraph (1) of this subsection does not require the plaintiff or the attorney for the plaintiff to make any investigations or to search any other records or sources of information other than those stated."

Section 14–839(b) then declares:

The provisions of this section as to notice ... coupled with the order of publication and the other publicity and notices as ordinarily accompanies the sale ... as well as the knowledge of the taxes and the consequences for nonpayment of the taxes is declared:

(1) to be reasonable and sufficient ... and necessary in light of the compelling need for the prompt collection of taxes; and

(2) to supersede any other requirement in other cases or civil causes generally.

Section 14–832 provides:

The provisions of §§ 14–832.1 through 14–854 of this subtitle shall be liberally construed as remedial legislation

---

1. The notice provisions were amended in 1986, along with other amendments made as a result of a Code Revision Commission Report. We have not found where the constitutionality of this statute, as amended, has yet been judicially scrutinized.

to encourage the foreclosure of rights of redemption by suits in the circuit courts and for the decreeing of marketable titles to property sold by the collector.

## Facts

On July 31, 1982, appellant, St. George Antiochian Orthodox Christian Church (which we will sometimes refer to hereafter as "the Church,") received, as a donation from Helen and George Hageage, a parcel of land described in a deed recorded among the Land Records of Prince George's County at Liber 5576, folio 72. Settlement on the property was performed by Commonwealth Title. Its name and address appears in printed form on the binder of the deed. That binder page was recorded because it also contained a portion of the notary clause. Neither transfer nor recordation taxes were assessed since the transfer was a gift to the Church.

The Church is located in Washington, D.C., and its officials did not believe that it was required to pay property taxes. They believed that it had tax exempt status with regard to the property,[2] and they had no knowledge of the taxes charged on the property by Prince George's County or by the State of Maryland. The County tax bills were sent to the address of the property at issue. This was the only address known to the collector of taxes. No one, including the Church, ever furnished any other address.

On May 14, 1984, appellees purchased the property at a tax sale. On June 28, 1987, they obtained an order foreclosing the Church's right to redeem the property.[3] The Church never received actual notice of the sale or of the foreclosure proceedings. Appellant filed, on March 10,

---

**2.** This contention will be addressed later in this opinion.

**3.** The complaint to foreclose the right of redemption was *filed* on April 2, 1986, within two years of the date of the tax sale.

1989, pursuant to Md.Tax–Prop.Code Ann. § 14–845, a motion to set aside the tax sale, which was denied.

On appeal, the Church poses three questions:

I. Does constructive notice alone satisfy due process requirements in a tax foreclosure proceeding?

II. Is Md.Tax–Prop.Code Ann. Sec. 14–839 violative of due process and, therefore, unconstitutional?

III. Did the Purchaser fail to comply with the letter of Sec. 14–839, the Maryland Rules, and the spirit of the due process of law?

### I and II

We shall address appellant's first two questions together. Appellant, arguing in its brief that constructive notice does not satisfy due process requirements, relies primarily on *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). It asserts that *Mullane* held "unless the interested party is not reasonably identifiable, constructive notice alone does not satisfy the mandate of the due process clause...." The holding in *Mullane* was not as appellant alleges. It was fact-based and substantially inapposite to the situation presented in this case.

The facts in *Mullane* involved the application of the notice provisions of a trust law in the state of New York. The United States Supreme Court ruled that notice *limited* to newspaper publication, which did not publish the names of known beneficiaries, was insufficient, and thus did not satisfy the requirements of due process. The Court stated:

As to known present beneficiaries of *known* place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at

hand, the reasons disappear for resort to means *less likely than the mails* to apprise them of its pendency.

The trustee has on its books the names and addresses of the income beneficiaries represented by appellant, and we find no tenable ground for dispensing with a serious *effort* to inform them personally ... *at least by ordinary mail to the record addresses....*

*Mullane* 339 U.S. at 318, 70 S.Ct. at 659 (emphasis added). The Court further stated:

A construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified.

*Mullane* at 313–14, 70 S.Ct. at 656–57. The Court then held:

The statutory notice ... is inadequate, *not because in fact it fails to reach everyone,* but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand.

*Mullane* at 319, 70 S.Ct. at 659 (emphasis added).

Likewise, the holding in *Mennonite, supra,* 462 U.S. 791, 103 S.Ct. 2706, is not nearly so broad as appellant asserts to this Court. We address, to the extent necessary, the underlying factual basis of *Mennonite* which gave rise to the ultimate decision in that case. We first note that the challenge in *Mennonite* was made by a mortgagee, not an owner. The Indiana statute at issue in *Mennonite* required notice as follows:

1. The county auditor was required to post notice in the courthouse for sale of the property.

2. The auditor was required to publish the *impending* sale for three weeks.

3. Notice *of the sale* by certified mail had to be given to the owner.

There was no Indiana requirement that a mortgagee need be notified and, in fact, Mennonite was not notified. We contrast that statutory omission with the requirement of

Maryland law in respect to mortgagees. Md. Tax–Prop. Law Code Ann. § 14–836(b)(1) (1986, 1989 Cum.Supp.) provides that the defendants [4] shall be:

> (i) The record title holder of the property as disclosed by a search ... of the land records ..., of the records of the register of wills ..., and of the records of the circuit court ...;
>
> \* \* \* \* \* \*
>
> (iii) any mortgagee ... named as such in any unreleased mortgage recorded in the land records ...;
> \* \* \*
>
> (v) the county ...;
> (vi) if appropriate, the State.

Section 14–839(a) provides for notice to defendants. It states that the title of the complaint must indicate the last known address of each defendant obtained from: title records examined, tax rolls, and any other address known to complainant. Section 14–839(b) provides that the plaintiff is not required to investigate any other records or sources. Section 14–839(b) then requires the plaintiff to mail notice to each defendant. This includes mortgagees. The plaintiff then must certify to the mailing. Finally, the legislature has expressly declared that the notice required by the statute is reasonable and sufficient in light of the compelling need for prompt collection of taxes and has also declared that these notice sections supersede the notice requirements of other cases or civil causes.

The mortgagee in *Mennonite* asserted, as to the underlying tax sale, that it had not received constitutionally adequate notice of the sale or of the opportunity to redeem the property. Our reading of the case indicates that the mortgagee, in fact, received neither constructive nor actual

---

**4.** The instant case involves challenges to the redemption foreclosure procedures and the governing redemption statute as opposed to tax sale provisions. The questions raised in appellant's brief all involve the foreclosure of redemption proceedings, not the underlying tax sale provisions. We presume, while not deciding, that due process considerations would be essentially the same for the two separate procedures.

notice, since it was not named as a party and would not, therefore, have had even notice by publication.[5] We conclude, therefore, that the Indiana notice provisions at issue in *Mennonite* were lacking, as they related to that appellant, by complete absence of any notice provisions. In contrast, the Maryland statute affords to all parties the statutorily required notice.

The *Mennonite* Court held:

When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice *by publication must be supplemented by notice mailed to the mortgagee's last known available address*, or by personal service.

*Mennonite*, 462 U.S. at 799, 103 S.Ct. at 2711 (emphasis added). The requirements of the Maryland statute are exactly those set out by the Supreme Court in *Mennonite*. The Maryland statute then required, and still requires, that which the Supreme Court suggests in *Mennonite*, is necessary, *i.e.*, notice to the mortgagee.

Appellant, in the case *sub judice*, fails to perceive that the *Mennonite* Court declared the Indiana statute unconstitutional because mortgagees were not afforded the same notice as owners. The Maryland statute requires that identical notice be given to owners and mortgagees. When the *Mennonite* Court stated that constructive notice alone was insufficient, it was interpreting a factual situation where no notice, by mail or otherwise, was attempted or made prior to the order of publication. It did not hold that a notice procedure, such as Maryland's, was unconstitutional. It held (without referring to Maryland's statute), that Indiana's notice statute was unconstitutional because it

---

5. As stated, the Indiana statutes at the time of the 1977 sale did not provide for notice to mortgagees. That is no longer the case.

Ind.Code Ann. § 6–1.1–25–4.5(Burns 1989 Repl.Vol.) now require the purchaser at a tax sale to give notice within the redemption period to the owner "and any person with a substantial property interest of public record" by certified mail to their "last known address," or if the address is not known, "notice by publication" may be given.

lacked, for mortgagees, that which is contained in Maryland's notice statute.[6]

The *Mennonite* Court also stated:

We do not suggest, however, that a governmental body is required to undertake extraordinary efforts to discover the identity *and whereabouts* of a mortgagee whose identity is not in the public record.

*Id.* at 799, n. 4, 103 S.Ct. at 2711, n. 4 (emphasis added).

Aggarwal, the appellee in the case at bar, searched the title to the property; he searched the telephone books of the jurisdiction wherein the land lies; he contacted the Maryland Department of Assessments and Taxation for addresses; he mailed copies of the bill and summons to the address contained in the tax records which were directed to appellant; he mailed a notice to the address contained in the tax records directed to "occupant"; and he wrote the postmaster for an address. Aggarwal then proceeded with the process of publication and had the sheriff attempt service at the address in the tax records. While actual personal service was not obtained, appellee made diligent efforts in an attempt to effectuate such service and only proceeded with constructive service after those efforts were fruitless. Neither *Mullane* nor *Mennonite* requires more of a tax sale purchaser during a redemption foreclosure. Those cases do not require more of statutory notice provisions than are contained in the Maryland statute as they now read, *or as they then read.*

The Church also states that two other cases support their claims that neither the notice nor the statute in the case *sub judice* passes constitutional due process muster. The cases are *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) and *Michigan v. Dow,* 396 Mich. 192, 240 N.W.2d 450 (1976).

---

**6.** We note that the Indiana courts apparently join with our assessment. *See Holland v. King,* 500 N.E.2d 1229, 1235 (Ind.App.1986).

*Schroeder* involved an order of publication in two newspapers as to the impending diversion of river water from Schroeder's property. Under New York law as it then existed, this action amounted to a condemnation. The city had Schroeder's address which was geographically distant from the diversion area. No notification, either personal or by mail, was attempted, however. While the subject property was not posted, notices were posted on nearby properties. The notice by posting and publication complied with the New York statute. The newspaper advertisement did not contain Schroeder's name or address.

The Court, quoting from earlier cases, said:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Schroeder,* 371 U.S. at 211, 83 S.Ct. at 281 (citations omitted). The Court rejected, as unconstitutional for due process reasons, notice "less likely than the mails to apprise them of its pendency." *Id.* at 213, 83 S.Ct. at 282 (citation omitted). The present case contains ample facts indicating an attempt at service by mail. The Maryland statute contains such provisions. The constitutional objections extant in *Schroeder* simply do not exist in this case, nor do they exist in the Maryland statutes.

The same situation exists upon comparison of the facts in *Dow, supra,* to those of the case at bar. The Supreme Court of Michigan, in *Dow,* held that the Michigan statute was unconstitutional as applied in that case in that no notice was actually mailed and the Michigan statute specifically provided that no consequences could attach to that mailing failure. On this basis, *Dow* is clearly distinguishable from the instant case. The Maryland statute requires that a copy of the order of publication be mailed by the complainant by first class or certified mail to each defendant at the defendant's address, as that address is determined under

the provisions of the statute, *i.e.*, title examination records, tax rolls, other known addresses. The Maryland notice by publication must identify the owner by name, as well as furnish the other pertinent information. Unlike *Dow*, the facts of the case at bar indicate that the provisions of the notice statute were substantially met. Unlike the Michigan statute in *Dow*, Maryland's statutory scheme contains remedies for significant failures to comply with the notice requirement. *See* Md. Tax–Prop. Code Ann. § 14–845.

The Michigan Supreme Court in *Dow*, after determining that the Michigan statute was unconstitutional on due process grounds stated:

> Personal service is not required. Notice by mail is adequate. Mailed notice must be directed to an address reasonably calculated to reach the person entitled to notice.... If the state exerts reasonable efforts, then failure to effectuate actual notice would not preclude foreclosure of the statutory lien ....
>
> \* \* \* \* \* \*
>
> [I]t would satisfy constitutional requirements if the state were to adopt a procedure providing for (i) ordinary mail notice before sale to the person to whom tax bills have been sent and to "occupant"....

*Dow*, 240 N.W.2d at 459–60 (footnotes omitted). It is clear that under the analysis utilized by the Michigan court, the statute and notice at issue in this case would meet and surpass the due process requirements espoused by the court in *Dow*.[7]

 The Maryland Legislature has expressed by statute that it is the policy of Maryland that the notice provisions of the statute, so long as they are substantially complied with, are sufficient and reasonable. Additionally, section 14–832 states that these provisions will be construed liberally as remedial legislation to encourage the foreclosure of rights

---

7. The Maryland Court of Appeals in *Golden Sands Club, infra* cites *Dow* for the proposition that mailed notice, whether or not received, is sufficient if reasonably calculated to reach the person.

of redemption and for the "decreeing" of marketable title. *Mullane, Mennonite, Dow* and *Schroeder* are not authority to the contrary. The fact that the Maryland Legislature, post-*Mennonite*, may have made the notice requirement less stringent does not, in and of itself, make those requirements unconstitutional.

The Court of Appeals in *Golden Sands Club v. Waller*, 313 Md. 484, 545 A.2d 1332 (1988), a post-*Mennonite* notice case, reversed a trial court's finding that the Contract Lien Act was unconstitutional due to the inadequacy of hearing opportunities. Judge Adkins, writing for the Court, also addressed the constitutionality of the Act's notice requirements:

> Like the concept of a due process hearing, however, the concept of " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action' " is not a static principle, yielding but a single uniformly applicable rule. Rather, a court considering the constitutionality of notice in a particular case must balance the interests of the state or the giver of notice against the individual interest sought to be protected by the fourteenth amendment. The focus is on the reasonableness of the balance; whether a method of giving notice is reasonable in a given case depends on the specific circumstances of that case. *See Tulsa Professional Collection Serv. [v. Pope ]*, 485 U.S. [478] at 484, 108 S.Ct. [1340] at 1344, 99 L.Ed.2d [565] at 574–575 [ (1988) ]; *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873; *Goodyear Tire v. Ruby,* 312 Md. 413, 420, 540 A.2d 482, 485 (1988); *[Department of Transportation, Motor Vehicle Administration, Department of Health & Mental Hygiene v.] Armacost,* 299 Md. [392] at 416, 474 A.2d [191] at 203 [ (1984) ]. . . .

*Id.* 313 Md. at 496, 545 A.2d 1332.

We are dealing here with the notice requirements of procedural due process. In that context, *actual receipt of notice is not the test.* For example, a creditor whose existence and name and address are not reasonably ascer-

tainable may be deprived of a property interest, it seems, after receiving only constructive notice (publication), just as a mortgagee whose existence is not apparent may be similarly treated. These are the implications, at least, of *Tulsa Professional Collection Serv., supra,* and *Mennonite Bd. of Missions, supra.* [emphasis added]

*Id.* 313 Md. at 500, 545 A.2d 1332.

The Court of Appeals, in *Golden Sands,* then interpreted the Supreme Court's decision in *Tulsa Professional Collection Serv.,* 485 U.S. 495, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), saying:

The Supreme Court agreed, relying on *Mennonite Bd. of Missions* for the proposition that provision for (not receipt of) actual notice (as opposed to constructive notice) " 'is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party ... if its name and address are reasonably ascertainable.' "

*Id.* 313 Md. at 502, 545 A.2d 1332 (emphasis in original).

The Court of Appeals concluded:

It thus appears that for notice purposes in circumstances involving the potential deprivation of a substantial interest in property, the court has equated personal service and mail service as means equally well-calculated to attain actual notice and, therefore, acceptable from the due process viewpoint.

*Id.* at 503, 545 A.2d 1332.

■ We hold, therefore, that the provisions of Md. Tax–Prop. Code Ann. § Title 14 Subtitle 8, Part III "Tax Sales," generally, and the provisions of § 14–833 et seq., as currently in effect, and as they relate to proceedings for the foreclosure of the rights of redemption, are constitutional.[8]

---

8. We note appellant's reference to the Code Revisions Commission Report that the proposed amendments resulting in the current statute would address *Mennonite* due process issues, and that, as enacted, they fail to do that. As we have said, we see no conflict between the pre–*Mennonite* Maryland statute and the holding in that case. Nor do

We hold that the notice provisions of the statute are constitutional whether actual service is made, so long as substantial adherence to the statute's requirements are met. As we shall show in our treatment of the next issue, the procedure followed in the case at bar adhered substantially to the notice requirements set forth in the statute.

## III

■ Appellant raises a third question: "Did the purchaser fail to comply with the letter of § 14–839, the Maryland Rules and the *spirit of the due process of law?* " (emphasis added) We first address the applicability of the Maryland Rules.

The property owner in the tax sale redemption case of *Simms v. Scheve*, 298 Md. 1, 467 A.2d 499 (1983), failed to respond after having been summonsed. The decree foreclosing the right of redemption was signed on February 18, 1981. On July 2, 1981, Simms filed a motion to vacate asserting a failure to comply with Maryland Rules 320 and 611, in that a decree pro confesso had not been first obtained. The rules then required generally that, in equity, a decree pro confesso must be obtained before proceeding upon default against a party who failed to comply with time requirements.

*Simms* contended that the regular equity rule also applied to tax sales. The Court responded:

> As discussed above, §§ 97–123C of Article 81, outline a complete, clear, and logical procedure for foreclosing this right. Simms's argument that the equity Rules requiring the decree *pro confesso* apply simply is not correct. In

we see a conflict in the post–*Mennonite* Maryland statute. We note that, while we do not afford that construction to it, the Commission's statement can also be construed to support a committee position that *Mennonite* permitted a less strict notice provision than existed in the Maryland statute.

fact, Maryland Rule BS40 [9] governing tax sales merely refers to §§ 70–123, thus acknowledging the statute's exclusivity in defining the applicable procedure.

Although this section notes that general equity practice applies, it specifically excludes such practice if "otherwise provided in this subtitle." Other sections of Article 81 clearly indicate that the decree *pro confesso* is not required.

\* \* \* \* \* \*

Thus, the statute has logically replaced the decree *pro confesso* with a special subpoena designed to inform the defendant of the consequences of inaction. No further notice is required for the foreclosure proceeding to become complete.

*Id.* 298 Md. at 8–11, 467 A.2d 499.

The Court of Appeals in *Office & Prof. Employees Int'l v. MTA,* 295 Md. 88, 453 A.2d 1191 (1982), in discussing remedies in respect to labor law issues, stated:

A related principle is that where a statute authorizes or permits a person or agency to take a certain type of action in a particular manner, such manner becomes a mandatory limitation, and the action must be taken in conformity with it. *Trust Co. v. Ward Baking Corp., supra,* 177 Md. [212] at 220 [9 A.2d 228] (" 'A statute that directs a thing to be done in a particular manner ordinarily implies that it shall not be done otherwise.' "); 2A Sutherland,[10] *supra,* §§ 57.14–57.18.

*Id.* 295 Md. at 96, 453 A.2d 1191.

Additionally, as we have previously indicated, Md. Tax–Prop. Code Ann. § 14–839 expressly states that the provi-

---

**9.** Maryland Rule BS40 still provides that such tax sale procedures shall be in accordance with Code, Art. 81, §§ 70 to 123. That rule has not yet been modified to reflect the 1985 and 1988 amendments which effectively repealed Art. 81, creating the Tax–General and Tax–Property Articles. These modifications are now under consideration by the appropriate entities.

**10.** 2A Sutherland, *Statutory Construction* (4th ed.1973).

sions of issuance of process and notice to defendants contained in it "supersede any other requirement in other cases or civil causes generally." By its specificity, this 1986 amendment superseded the provisions of the 1985 statute, which provided that "process shall be the same as in other civil actions." Accordingly, we hold that the notice requirements contained in the redemption foreclosure provisions of the Tax–Property Article of the Code govern redemption foreclosure proceedings.

▮ We must now determine whether the efforts of the appellee to effectuate notice are in sufficient compliance with the statute.[11] We note initially that Md. Tax–Prop. Code Ann. § 14–845(a) provides that:

[a] court in this State may not reopen a judgment rendered in a tax sale foreclosure proceeding except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose; however, *no reopening* of any judgment on the ground of constructive fraud in the conduct of the proceedings to foreclose *shall be entertained by any court* unless an application to reopen a judgment rendered is filed within 1 year from the date of the judgment. [emphasis added]

The final judgment foreclosing appellant's right of redemption was rendered by the trial court on July 28, 1987. The Church filed its motion to set aside the tax sale on March

11. For a historical perspective on the evolution of the law of tax sales, and proceedings to foreclose rights of redemption, specifically, *see* Miller, *Equity Procedure* §§ 734–736 (1897). *See also Polk v. Rose,* 25 Md. 153 (1866) (burden is on purchaser to show complete and faithful compliance with statutory provisions); *Beatty v. Mason,* 30 Md. 409 (1869) (requisites of statute form a necessary link in purchaser's chain of title, and if purchaser does not show total compliance with statute, purchaser's title cannot be upheld). *But see* the post–1872 statute (Ch. 384, Acts of 1872) cases of *Cooper v. Holmes,* 71 Md. 20, 17 A. 711 (1889) (final ratification of sale operates to relieve the purchaser of the onus of proof, and to cast the onus of showing the illegality of the sale upon the party resisting the sale); and *Textor v. Shipley,* 86 Md. 424, 38 A. 932 (1897) (when tax sales are under consideration it is only necessary that it shall appear that there has been substantial compliance with the law).

10, 1989, more than one year after the judgment was entered. It is clear that no actual fraud occurred under the circumstances of the case. Indeed, the Church does not so allege. The Church maintains primarily that because its title insurer's address was contained on the deed in the land records, the appellee could have contacted the title company and would have been able to obtain from that company the address of the Church. It states that, "under the circumstances it was incumbent upon the purchaser to obtain the address of the Church by writing to the title company." The Church maintains that the language of the statute "should have compelled the purchaser to contact the title company." The statute, of course, does not specifically require this type of second level search.[12]

Appellant further maintains that, because it is a Church, the appellee should have contacted the "State Corporation Offices" in Washington, D.C., Maryland and Virginia. It directs us to no part of the statute, however, specifying the necessity for such an effort. It also asserts that appellee should have checked the telephone directories for the District of Columbia. Again, it directs us to no statutory requirement. Indeed, it candidly admits that the District of Columbia telephone book listing of the Church at the time in dispute was different than the actual name of the Church on the tax rolls. It argues, however, that the names were sufficiently similar that appellee should have called the Church anyway.

█ Finally, appellant asserts on appeal for the first time that the appellee failed to attach return receipts relating to the attempt to effectuate service as mentioned in appellee's affidavit. Our search of appellant's motion to vacate and of

---

**12.** The address of the title company was not found in the body of the deed but apparently in a deed binder backing with instructions to mail the deed, not to the title company, but to the grantee (the Church).

the transcript contained in the record extract fails to demonstrate that this final issue was raised below. Accordingly, it is not preserved for appeal. Maryland Rule 8–131.[13] A consideration of this alleged error would not, however, change the decision we shall reach.

The facts as they relate to notice, in the case of *Sanchez v. James*, 209 Md. 266, 120 A.2d 836 (1955), indicated that the tax sale purchaser caused a summons to be issued to the property owner at a Columbia Road, Washington, D.C., address. The tax sale purchaser, Mr. James, asserted in his complaint that the Columbia Road address was the last known address for Mr. and Mrs. Sanchez. The Columbia Road address was the same address contained in the applicable land records.

The Sanchezes filed a petition to set aside this final foreclosure decree alleging that they had not lived at the Columbia Road address for 12 years, and that the assessment records of Prince George's County contained their correct address, *i.e.,* "6600 Central Ave (Prince George's County Maryland) post office address Washington, D.C." The Court said:

> However, there was no allegation or proof that complainant furnished the former address for the purpose of fraud or deception. As a matter of fact, complainant's attorney obtained the address from the margin of the record of defendants' deed, which was filed in the office of the Clerk of the Circuit Court in January, 1941. Complainant's attorney also looked in the assessment book in the office of the County Treasurer, but there was no address opposite the description of the property in controversy, although the address did appear opposite the description of property two items above. It is our conclusion that there was no fraud in the conduct of the

---

**13.** In light of our following holding that there was no lack of jurisdiction in the trial court, Maryland Rule 8–131 applies.

proceedings, and defendants failed to show that the Circuit Court lacked jurisdiction.

*Id.* at 273, 120 A.2d 836.

In *Hauver v. Dorsey*, 228 Md. 499, 180 A.2d 475 (1961), the Court was concerned with the failure of a tax sale purchaser to file an affidavit required by the then existing Maryland Rule 105.[14] The *Hauver* Court stated: "The only question is whether the failure to file the affidavit is a jurisdictional defect." *Id.* at 503, 180 A.2d 475.

We may assume that the issuance of an order of publication under section 107, *supra,* is a jurisdictional requirement to bar the claim of a known or unknown party defendant, or one claiming under him. The question is whether Rule 105 adds an additional requirement of a jurisdictional character. We think not. The manner in which the order issues is governed by the rule. But while the rule states that a party shall file an affidavit of the mailing of a notice, where a person's residence or whereabouts is known, or if unknown, an affidavit of reasonable efforts to locate and warn such person, it is not declared, in terms, that this would affect the jurisdiction of the court. The rule certainly does not require personal service, but, in effect, only a showing of good faith on the part of the plaintiff.

*Id.* at 504, 180 A.2d 475. The Court then held:

We have frequently pointed out that the tax sales law was designed to improve the marketability of tax titles. See *Thomas v. Kolker*, 195 Md. 470, 475 [73 A.2d 886]. Petitioner was less than diligent in failing to ascertain that taxes were in default, that the sale had been made, and a proceeding to foreclose instituted. Cf. *James v. Zantzinger, supra* [202 Md. 109] (p. 115 [96 A.2d 10]). We see no reason to hold that a procedural requirement, designed to prevent imposition upon the court and require

---

**14.** As we have said, the notice provisions contained in then Maryland Rule 105 have been superseded, as to notice for redemption foreclosures, by the applicable provisions of the Tax–Property Article.

a reasonable effort in good faith to locate and warn the owner, creates a jurisdictional defect in the fundamental sense of preventing the court from dealing with the subject matter and the parties before it. . . .

*Id.* 228 Md. at 505, 180 A.2d 475 (citations omitted).

The facts in our case of *Karkenny v. Mongelli,* 35 Md.App. 187, 370 A.2d 137 (1977), indicated that in an action to foreclose a right of redemption, two summons had been returned non est and that publication was then advertised. One of the property owners thereafter claimed, among other things, that the affidavit required to be filed was insufficient. The trial court agreed, and vacated the redemption foreclosure decree.

We reversed the decision of the trial court in *Karkenny,* holding that the failure to supply a sufficient affidavit constituted constructive fraud. Thus, the decree could not be reopened as a year had passed since the signing of the decree. We said, contrasting the earlier case of *Jannenga v. Johnson,* 243 Md. 1, 220 A.2d 89 (1966),

Under the law as we have discussed it, Mr. Karkenny's failure to comply with the requirements of Rule 105 did indeed amount to a constructive fraud, sufficient to justify the voiding of his decree and deed as to the Mongellis, had they made their attack upon the decree within one year from its date. But the application of the *Jannenga* ruling was curtailed by the General Assembly two years later when it amended Art. 81, § 113 by enacting Chapter 729, Laws of 1968, effective 1 June 1968.

*Karkenny,* 35 Md.App. at 192–93, 370 A.2d 137. The 1968 amendment limited the reopening of redemption foreclosure decrees to one year if based upon constructive fraud, as the current statute also provides.

Accordingly, we hold that the alleged deficiencies in notice did not cause the proceeding to be jurisdictionally deficient nor did they constitute actual fraud. While we do not so decide, even if the matters complained of failed to satisfy the exact requirements of the statute, they would

not rise above the level of constructive fraud. Thus, the appellant did not comply with the statute which required its "Motion to Set Aside Tax Sale" to be filed within a year of the date of the decree foreclosing the right of redemption, and it is not entitled to the relief requested on those grounds.

## IV

Appellant also seems to argue, though it does not present this matter as a question or an issue, that because it is a church, it is, or should be, exempt from the foreclosure of its redemption rights, saying in its brief that the "Church received property as a donation from a parishioner. The Church never received the bills. It did not inquire about nonreceipt of the tax bills because it believed it was tax exempt and did not expect to receive any tax bills.... Thus, the Church should not have to bear the consequences for nonpayment of taxes as perhaps would a tax evader."

■ Exemptions from taxation for religious and charitable institutions are provided for by statute. But they are not automatic. They must be applied for and received. Md. Tax–Prop.Code Ann. § 7–103(a) provides: "Real property that is subject to exemption ... is not exempted until the exemption has been applied for and approved ...." Section 7–204 states: "Property that is owned by a religious group or organization is not subject to property tax if the property is actually used *exclusively* for: (1) Public religious worship; (2) a parsonage or convent; or (3) educational purposes." (emphasis added) Section 7–101 states: "Property tax exemptions provided under this title shall be strictly construed." Given the nature of the subject property (a vacant lot), as described by appellant, it would not qualify for an exemption in the first instance. Even if it would qualify, an exemption was neither requested nor approved. The Church thus enjoys no special status in relation to the property at issue because of the religious nature of its organization.

For the reasons we have stated, we perceive no error and thus shall affirm the trial court.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.